[Cite as *State v. Fowler*, 2021-Ohio-2854.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ROGER D. FOWLER, II,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CO 0002**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2018 CR 186

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed and Remanded in part.
Sentence Vacated.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor and *Atty. Ryan P. Weikart*, Assistant Prosecuting Attorney, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee

*Atty. Timothy Young*, Ohio Public Defender and *Atty. Craig M. Jaquith*, Assistant State Public Defender, Office of the Ohio Public Defender, 250 E. Broad Street, Suite 1400, Columbus, Ohio  43215, for Defendant-Appellant.

Dated:  August 11, 2021

---

**WAITE, J.**

{¶1}  Appellant, Roger D. Fowler, II, appeals his conviction and sentence for gross sexual imposition in the Columbiana County Court of Common Pleas.  On appeal, Appellant claims the trial court erred in several respects:  in barring expert witness testimony; in letting the state's expert testify beyond the scope of his written report; and in permitting police to testify regarding the truthfulness of the victim and credibility of the accused.  Appellant also argues cumulative error and that he improperly received a mandatory sentence.  For the following reasons, Appellant's first, second, third and fourth assignments of error are without merit and his conviction is affirmed.  Appellant's fifth assignment of error regarding sentencing is sustained and the matter is remanded to the trial court for resentencing.

<u>Factual and Procedural History</u>

{¶2}  On February 18, 2017, Appellant and his wife attended a surprise birthday party at the home of a former coworker.  The coworker (T.W.) resided in Lisbon, Ohio with his wife, 8-year-old daughter (A.W.); and two younger sons.  At the party, Appellant and his wife became extremely intoxicated and unable to drive home.  T.W. offered to let them spend the night on a sectional couch on the first floor of the house.  Appellant's wife became ill and went to sleep on the couch while Appellant and T.W. continued to drink.  T.W. eventually went to bed and Appellant joined his wife on the couch.  The Fowlers left prior to the family waking the following morning.

<u>Case No. 20 CO 0002</u>

{¶3}    T.W. testified at trial that approximately eleven months after the party, he found A.W. looking at pornography on her tablet computer.  He asked her why she was viewing it and how she knew to access it.  At first the child told him that a friend from school had shown her.  T.W. took the tablet and told A.W. he was going to check it and intended to call her friend's parents.  The child then became extremely upset and told her father that her friend played no part in her venture into viewing pornography, but that something else had happened.  She said that a man who was at her father's birthday party entered her room that night and fondled her between her legs.  When her father asked if she knew who the man was, A.W. told him it was the man who slept on the couch.  Her father showed her a picture of three men who were at the party.  She pointed to Appellant and said that he was the man who touched her.  (11/7/19 Tr., p. 236.)  T.W. then contacted the Columbiana County Sheriff's office and A.W. was taken to Akron Children's Hospital Advocacy Center, where she underwent a full diagnostic interview and complete physical examination.

{¶4}    Paula Beverly ("Beverly"), intake investigator with the Department of Job and Children Services, conducted a home visit and safety assessment.  She testified that A.W.'s parents were concerned Appellant would return to their home.  Beverly referred the family to the Akron Children's Hospital Advocacy Center and, after A.W.'s interview and physical examination were completed, Beverly compiled the written reports and audio CDs of the child's assessments.  She also collaborated with Detective Caleb Wycoff ("Det. Wycoff") of the Columbiana County Sheriff's Department to conduct a background check of Appellant.  As part of her investigation, Beverly is required to review all interviews and make a determination on the allegations.  Beverly testified that she reviewed the interview

of Appellant conducted by Det. Wycoff. She testified that she had participated in "thousands" of child sexual abuse investigations over a span of approximately 20 years. (11/7/19 Tr., p. 332.) After reviewing the video interview of Appellant, she noted that he seemed "very somber" during the course of the 40-minute interview. (11/7/19 Tr., p. 331.) She stated that, "[i]n my experience when we advise the [accused] of a sexual assault they usually get very excitable, very denial [sic], I didn't do this, this is wrong, they stop the interview. They ask for an attorney. And none of these things seem [sic] to occur – it did not occur in this interview, which was surprising to me." (11/7/19 Tr., p. 333.) Beverly ultimately concluded, based on her review of the reports and interviews, that A.W.'s allegations of sexual abuse were substantiated. (11/7/19 Tr., p. 336.)

{¶5} The next witness presented by the state was Megan Early ("Early"), a family friend of the victim's parents. Early testified that she was at the surprise birthday party and witnessed Appellant and his wife drinking heavily throughout the evening. She testified that they were slurring their words, and that both were carrying firearms and were asked to give their firearms to the homeowners. (11/7/19 Tr., p. 372.) She testified that she and her husband were the last to leave the party, with the exception of Appellant and his wife, when it was determined that the Fowlers should spend the night on the couch. (11/7/19 Tr., pp. 373-374.)

{¶6} Det. Wycoff, Detective Sergeant with the Columbiana County Sheriff's Office, was the next witness to testify for the state. He testified that after reviewing the investigation by Children Services, he contacted Appellant by telephone and told him he was a suspect in a criminal investigation. Det. Wycoff requested an in-person interview at the police station. Immediately after setting up the interview, Det. Wycoff testified that

he received a call from A.W.'s father, who told him that Appellant had called and sent text messages to A.W.'s father asking about the investigation. Appellant was interviewed at the Columbiana Sheriff's office on February 20, 2018 by Det. Wycoff and Detective Sergeant Steve Walker ("Det. Walker"). Appellant's attorney was also present. A video recording of the interview was offered into evidence and was played for the jury at trial. After the video was played, Det. Wycoff testified regarding Appellant's demeanor during the interview:

> Nervous. His voice constantly cracking. His eyes were watering. Kind of hunched over most of the time. Always fidgeting with hands, fingers, and hands and avoiding eye contact -- was looking down and stuff like that.

(11/7/19 Tr., p. 401.)

{¶7} Det. Wycoff testified that when Appellant was confronted with A.W.'s allegation he had a "lack of reaction" and "[d]id not seem surprised by the allegations." (11/7/19 Tr., p. 401.) Appellant did not act indignant or make any vehement denials. During the interview, Appellant was asked if his DNA or fingerprints could be found in A.W.'s room. He admitted he had been in A.W.'s room, telling Det. Wycoff he had been given a tour on the night of the party of the recently completed home. Appellant also said that during the party he may have blacked out. Although Det. Wycoff did not inform Appellant of the specific incident that gave rise to his questioning, Appellant stated that after the interview was scheduled he asked his wife if anything had happened at the birthday party.

Case No. 20 CO 0002

**{¶8}** On cross-examination Det. Wycoff testified that he did not interview A.W. but had reviewed her interview from Akron Children's Hospital. Importantly, defense counsel also questioned Det. Wycoff about the portion of the interview between Det. Wycoff and Appellant where Det. Wycoff told Appellant that a 7-year-old would not make up a story like this, to which Det. Wycoff admitted, "[y]es, it was an error on my part." (11/7/19 Tr., p. 422.)

**{¶9}** Courtney Wilson ("Wilson") a social worker who interviewed A.W., testified that A.W. described details of the incident, including experiential and sensory details. Wilson testified that this level of detail strongly supported A.W.'s allegations and strongly inferred that the child had not been coached. (11/7/19 Tr., pp. 492-496.) A video recording of Wilson's interview with A.W. was played for the jury. During the interview, A.W. described how Appellant had touched her and that it stung. According to Wilson's testimony, because A.W. was able to describe how the incident felt physically, and was able to both provide a narrative and answer follow up questions, this demonstrated to Wilson that she had not been coached. (11/7/19 Tr., pp. 492-493.)

**{¶10}** A.W., who was ten years of age at the time of trial, also testified. On the night of the incident she said she woke up when a man entered her room. (11/7/19 Tr., p. 550.) She could not see his face at the time, but remembered that he had a beard. (11/7/19 Tr., p. 552.) She testified that she was wearing a nightgown, and the man took off her underwear, licked his finger, and put it on her "private." (11/7/19 Tr., pp. 549, 553.) She testified that it hurt when he touched her. (11/7/19 Tr., p. 554.) Before the man left he told her he loved her and not to tell anyone. (11/7/19 Tr., p. 555.) After the man left, A.W. became concerned about her younger brothers, so she went to their room to check

on them. After checking on her brothers she peered over the railing and saw the man who had been in her room lying down on the couch. (11/7/19 Tr., pp. 555-556.)

{¶11} On cross-examination A.W. testified that her father had been upset when he discovered her watching pornography. She said she had originally told her father that a school friend had introduced her to pornography, "I was trying -- when the guy told me not to tell anyone - -." (11/7/19 Tr., p. 566.) "But [the friend] didn't tell me about the videos." (11/7/19 Tr., p. 566.) On redirect, A.W. testified that she was watching the videos to try and figure out what had happened to her the night of the birthday party. (11/7/19 Tr., p. 575.)

{¶12} The last witness called by the state was Dr. Paul McPherson, Medical Director of the three child abuse clinics operated by Akron Children's Hospital. He testified as an expert witness. The physician who examined A.W., Dr. Sharma, was no longer practicing at Akron Children's Hospital and had relocated to California, but Dr. McPherson testified that in his role as medical director, he has access to all patient records. Dr. McPherson reviewed A.W.'s file and prepared a written report that was submitted to defense counsel prior to trial. He testified that it was not unusual that A.W. disclosed the abuse to her father ten months after it occurred, as it is common for a child to delay disclosing sexual abuse. (11/7/19 Tr., p. 589.) Dr. McPherson stated that because children are trusting of adults and do not fully understand issues surrounding sexuality, they are likely to delay such disclosure. (11/7/19 Tr., p. 590.) He testified that the 10-month delay in A.W.'s disclosure was age-appropriate for an 8-year-old. (11/7/19 Tr., p. 591.) Dr. McPherson stated that it was not atypical in abuse cases to find no physical injury, as 90 percent of cases do not reveal any physical findings. (11/7/19 Tr.,

p. 595.)  He also concluded that the type of abuse described by A.W. would not have resulted in findings of physical injury ten months later.  (11/7/19 Tr., p. 597.)  Dr. McPherson was also asked about A.W. viewing pornography and whether it was "surprising behavior for a child sexual assault victim."  Defense counsel objected, noting that Dr. McPherson's written report contained no findings or conclusions regarding A.W. viewing pornography as a result of sexual abuse, making his testimony on the issue at trial inadmissible.  The trial court overruled the objection, concluding that Dr. McPherson was offering his opinion based both on his general knowledge and of A.W., specifically. (11/7/19 Tr., p. 600.)

{¶13}  In Dr. McPherson's direct testimony he stated that A.W.'s testimony regarding the night of the incident contained detailed information that would not be typical for the life experience of an 8-year-old.  He also testified, over defense objection, that the description of the incident by A.W. "would be very difficult to glean from watching pornography[.]" (11/7/19 Tr., p. 603.)  Finally, Dr. McPherson testified that he agreed with the examining physician and opined that with a reasonable degree of medical certainty A.W.'s evaluation was consistent with child sexual abuse.  (11/7/19 Tr., p. 604.)

{¶14}  On cross-examination, defense counsel inquired:

Q.  Doctor, because you didn't interview the child or the family, you don't know how much video pornography the child watched; do you?

A.  No, I do not know how much.

Q. And you don't know the timeframe that she watched internet video pornography either before the alleged incident or after the alleged incident; correct?

A. That wasn't recorded in the medical record.

Q. Okay.

A. Other than it did happen after the incident.

Q. But you don't know when it happened?

A. Well, it happened after the incident. Did it happen before? I don't know. That wasn't recorded in the medical record.

(11/7/19 Tr., p. 622.)

{¶15} Appellant testified on his own behalf. Appellant said that he had been at the house once before while it was under construction but this was the first time he had been there since completion. A.W.'s father had shown him several areas of the house when he arrived, including the basement, where he tried to do a bench press. (11/7/19 Tr., p. 662.) Appellant and his wife arrived at the party at approximately 7:30 p.m. and they went to sleep on the couch around 12:30 a.m. He testified that most of the adults were drinking, including himself, his wife, and T.W. His wife had vomited earlier in the evening, which he said could have been attributed to something she ate. He testified that he had no contact with A.W. that night. He and his wife slept on the L-shaped sectional couch with their heads meeting in the corner. (11/7/19 Tr., p. 666.) They woke up early,

at approximately 6:00 a.m., and collected their shoes, coats and firearms, leaving the house before anyone else was awake. He testified that he only knew three people in Columbiana County and all three were individuals he previously worked with, including T.W. When Det. Wycoff contacted him to request an interview because he was a suspect in a Columbiana County criminal case, he thought one of his three acquaintances from Columbiana County was playing a prank on him. (11/7/19 Tr., p. 674.) Det. Wycoff did not provide any details of the crime during the phone call. After he agreed to be interviewed, he contacted all three acquaintances to see if they knew anything, still thinking someone was playing a joke. (11/7/19 Tr., p. 676.) He spoke to the two other acquaintances first, who denied involvement. T.W. did not answer his phone and did not return his calls.

{¶16} Appellant decided to hire a lawyer to be present during the police interview. Appellant heard A.W.'s allegation for the first time during the interview and said he "was in complete shock." (11/7/19 Tr., p. 679.) He was concerned that he and his wife were no longer going to be able to be foster parents because of the allegation. (11/7/19 Tr., p. 681.) On cross-examination Appellant testified that he had a drinking problem and tended to binge drink. (11/7/19 Tr., p. 690.) He had to ask his wife if anything happened at the party that he was not aware of because of his level of intoxication.

{¶17} On May 17, 2018, the Columbiana County Grand Jury issued a secret indictment alleging one count of gross sexual imposition involving a child less than 13 years of age, in violation of R.C. 2907.05(A)(4). A superseding indictment on the same charge was issued on September 24, 2019. Appellant pleaded not guilty and the matter proceeded to a jury trial in November of 2019. At the conclusion of the four-day trial the

Case No. 20 CO 0002

jury returned a guilty verdict. On February 3, 2020, the trial court sentenced Appellant to a 42-month prison term, imposed as a mandatory sentence. Appellant was also classified as a Tier II sex offender.

**{¶18}** Appellant filed this timely appeal.

ASSIGNMENT OF ERROR NO. 1

The trial court erred when it wholly barred an expert witness for Mr. Fowler from testifying on his behalf. Fifth and Fourteenth Amendments, United States Constitution and Article I, Sections 10 and 16, Ohio Constitution. (Judgment Entry, Nov. 1, 2019; Tr. Vol. 4, pp. 742-743.)

**{¶19}** In Appellant's first assignment he challenges the trial court's exclusion of his expert witness testimony. Appellant frames his argument as a constitutional challenge to his ability to present an adequate defense, allowing us to affirm only if we find the error harmless beyond a reasonable doubt. However, this matter involves a question regarding evidence, and we review the trial court's evidentiary rulings for an abuse of discretion. *State v. Beshara,* 7th Dist. Mahoning No. 07 MA 37, 2009-Ohio-6529, ¶ 55. An abuse of discretion connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Yashphalt Seal Coating, LLC v. Giura*, 7th Dist. Mahoning No. 18 MA 0107, 2019-Ohio-4231, ¶ 14, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶20}** Pursuant to Evid.R. 702:

A witness may testify as an expert if all of the following apply:

(A)  The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B)  The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C)  The witness' testimony is based on reliable scientific, technical, or other specialized information.  To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1)  The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2)  The design of the procedure, test, or experiment reliably implements the theory;

(3)  The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶21}  In *State v. Boston,* 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989) the Ohio Supreme Court held that, "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."  *Id.,* at syllabus.  On the other hand, in

*State v. Stowers,* 81 Ohio St.3d 260, 690 N.E.2d 881 (1998), the Supreme Court held that an expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior generally observed in sexually abused children is admissible under the Ohio Rules of Evidence. "*Boston's* syllabus excludes expert testimony offering an opinion as to the truth of a child's statements (*e.g.*, the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person)," but "does not proscribe testimony which is additional support for the truth of the *facts testified to* by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis sic.) *Stowers* at 262-263.

{¶22} In *Boston*, the Court held:

[A] witness qualified as an expert by knowledge, skill, experience, training or education may have her testimony presented in the form of an opinion or otherwise and it need not be just scientific or technical knowledge. The rule includes more. The phrase "other specialized knowledge" is found in the rule and, accordingly, if a person has information which has been acquired by experience, training or education which would assist the trier of fact in understanding the evidence or a fact in issue and the information is beyond common experience, such person may testify.

*Id.* at 118-119.

{¶23} Therefore, where an expert has gained specialized knowledge through training and professional experience the average person lacks about behavioral characteristics of child abuse victims, his or her expert testimony is properly admitted. *Id.*

However, where the expert's testimony usurps the role of the jury and directly expresses an opinion about the child victim's truthfulness, it must be excluded. *Id.,* at syllabus.

**{¶24}** The state's motion in limine sought to exclude the testimony and report of Deborah Koricke, Ph.D. The state raised several issues: (1) Koricke's report improperly proffered an opinion that Appellant did not commit the offense; (2) Koricke's report contained personal opinions regarding the veracity of the child victim; and (3) Koricke's report was couched as a psychological evaluation of the defendant, which is inadmissible when the defendant is not claiming a mental defect or raising a defense of not guilty by reason of insanity.

**{¶25}** Appellant's response points out that Koricke is a qualified clinical psychologist. Further, as the only evidence against Appellant was the child's allegation, Koricke's report focuses on the fact that the child's statements made to her father and during her examination may not have been properly investigated by law enforcement and medical professionals.

**{¶26}** In its judgment entry the trial court granted the state's motion in limine, concluding:

> In the first 5 pages, the report of Ms. Koricke recounts significant personal and other information regarding the Defendant, including the results of a mental status and psychological examination. The Defendant has not demonstrated how any such testimony or opinion is relevant to the issues in this case.
>
> * * *

Case No. 20 CO 0002

The report of Ms. Koricke does contains [sic] a number of conclusions regarding her beliefs about this case. But the report does not directly conclude that the investigation in this case was inadequate. Instead, the report states it will "*explore* how these difficulties *can be* related to this case." More troubling is that Ms. Koricke has not expressed any of her beliefs or conclusions based on any degree of probability. Instead, she uses words like "quite possible and likely" and "may have and could have made false allegation." [sic] Any such opinion or testimony is not competent as a matter of law.

Typically, a medical expert's opinion testimony is only competent if it is held to a reasonable degree of medical certainty or probability. Admittedly, there is no requirement that an expert utter any magic words in terms of certainty or probability. But, the expert's testimony, when considered in its entirety, must be equivalent to an expression of probability.

The report also includes significant commentary regarding the veracity of the alleged child-victim. As an example, Ms. Koricke states, "There was definitively motive in creating the scenario of the alleged sexual abuse by this child." She also writes, "As a result, an abhorrent criminal charge of sexually abusing a minor was placed onto a man without any evidence but the statements of a young girl with motive to create the scenario."

Any such statement or testimony is also improper. Determining the weight of the evidence and/or credibility of a witness are duties of the trier of fact.

Case No. 20 CO 0002

(11/1/19 J.E., pp. 2-3.)

**{¶27}** Citing to *State v. Lang,* 129 Ohio St.3d 512,954 N.E.2d 596, 2011-Ohio-4215, Appellant argues that the trial court's exclusion of Koricke's testimony goes against Ohio Supreme Court precedent. In *Lang* the Court concluded that an expert witness in a criminal case can testify in terms of possibility rather than reasonable scientific certainty or probability. *Id.* However, the treatment of such testimony is analyzed under a sufficiency and weight argument, meaning that it is considered along with all of the other evidence in the matter. *Id.* at ¶ 77-78. "While several decisions from this court indicate that speculative opinions by medical experts are inadmissible since they are based on possibilities and not probabilities, * * * the better practice, especially in criminal cases, is to let experts testify in terms of possibility." *State v. D'Ambrosio,* 67 Ohio St.3d 185, 191, 616 N.E.2d 909 (1993).

**{¶28}** A review of this record reveals that the holding in *Lang* is inapplicable in this case. Here, the statements posited by Koricke in her report were not the result of specialized knowledge gained through training or experience. *Boston* at 118-119. Instead, Koricke directly challenged the veracity of the child-victim statements based on personal opinion, particularly with regard to her assumption that the child had a motive to be dishonest to avoid punishment for viewing pornography. Such broad statements regarding the credibility of the child-victim directly contradict the holdings of *Boston* and its progeny. *Lang* does permit the application of properly admitted scientific evidence to the facts of a case, but without any technical basis or relation to the expert's purported area of specialty, such statements do not qualify as expert opinion under Evid.R. 702. Moreover, as the state notes, Koricke's opinion that law enforcement failed to investigate

other theories or other suspects goes beyond her purported area of expertise as a psychologist and runs afoul of permissible expert testimony pursuant to Evid.R. 702.

**{¶29}** Appellant argues that even though portions of Koricke's report may have "touched on matters of witness credibility," the trial court should have redacted those portions rather than exclude her testimony entirely. (Appellant's Brf., p. 7.) However, where a purported expert's report contains multiple conclusions which improperly call into question the veracity of a child-victim in a sexual abuse case, sets forth unsupported assertions of the defendant's innocence, and concludes that law enforcement investigation was flawed (all of which is beyond the scope of her purported expertise) the trial court does not abuse its discretion in excluding the witness testimony.

**{¶30}** Appellant's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

The trial court erred when it allowed an expert witness for the State to testify, over objection, to matters beyond the scope of the expert's written report. Crim.R. 16. (Defendant's Ex. C; Tr. Vol. 3, pp. 597-604.)

**{¶31}** Appellant contends Dr. McPherson testified beyond the scope of the written report submitted pursuant to Crim.R. 16(K) and thus, that he is entitled to a new trial.

**{¶32}** Crim.R.16 governs discovery matters in criminal cases. Effective July 1, 2010, Crim.R. 16 underwent comprehensive modifications in order to strengthen protections of the constitutional due process rights of defendants at trial and promote more open discovery. *State v. Boaston,* 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 44. As part of that overhaul, Crim.R. 16(K) was adopted, which requires expert

witnesses to generate a written report that must be disclosed to the opposing party no later than 21 days prior to trial. *State v. Walls,* 2018-Ohio-329, 104 N.E.3d 280, ¶ 27 (6th Dist.). Crim.R. 16(K) reads:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶33} In this case Dr. McPherson did prepare a report in accordance with Crim.R. 16(K) well in advance of trial. However, Appellant contends that testimony elicited at trial from Dr. McPherson by the state went beyond the conclusions contained within his report. The Ohio Supreme Court has stated that the purpose of Crim.R. 16(K) is to avoid unfair surprise by providing notice to the defense so that the expert's findings and analysis can be challenged with the support of an adverse expert. *Boaston*, ¶ 48. Prior to *Boaston*, appellate courts had been split on whether the trial court must exclude expert testimony in all cases of noncompliance with Crim.R. 16(K), some deciding that exclusion is not always necessary because a trial court has discretion in evidentiary matters. However, in *Boaston,* the Ohio Supreme Court concluded the plain language of Crim.R. 16(K) limits the usual discretion of the trial court and "provides its own specific remedy for a violation

of the rule." *Boaston,* ¶ 54. Crim.R. 16(K) states that "[f]ailure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." Crim.R. 16(K). Therefore, as Crim.R. 16(K) removes the trial court's discretion it requires exclusion of expert testimony when a written report is not disclosed pursuant to rule. However, the reviewing court must still consider the matter in conjunction with Crim.R. 52 and a harmless error analysis is used in determining whether some error in this regard is reversible. See *State v. Morris,* 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23.

{¶34} Crim.R. 52(A) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Moreover, pursuant to R.C. 2945.83:

> No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
>
> * * *
>
> (C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby[.]

{¶35} In *State v. Harris,* 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, the Ohio Supreme Court set out the analysis used to determine whether the erroneous admission of certain evidence so affected a defendant's substantial rights that a new trial was required, or whether the admission was harmless pursuant to Crim.R. 52(A). First,

we must determine whether a defendant was prejudiced, in that the error had an impact on the verdict. Second, we must decide whether the error was harmless beyond a reasonable doubt. Finally, we must determine, after we disregard the evidence in question, whether the remaining evidence proves the defendant was guilty beyond a reasonable doubt. *Harris,* ¶ 37.

**{¶36}** It is undisputed here that Dr. McPherson's written report was disclosed to defense counsel within the timeframe set forth in Crim.R. 16(K). Dr. McPherson testified at trial about A.W.'s delayed disclosure of her abuse as well as the fact that it was typical not to find evidence of physical abuse where the abuse occurred many months earlier. The following exchange was then held:

Q: Now, [A.W.'s] father reported she was reviewing -- viewing websites dealing with sex or pornography.

A: Yes.

Q: Is this a surprising behavior for a child sexual assault victim in your experience?

[defense counsel objected and a sidebar was held.]

[DEFENSE COUNSEL]: Your Honor, this is a report of Doctor McPherson that was disclosed to us. He only has two conclusions in the entire report and he's already testified to those two conclusions.

The stuff about delayed disclosure and stuff about normal physical findings on the genital exam. That's it.

We have not had any opinions disclosed to us about video pornography watching. I know that came out a lot during the trial, but this man is called as an expert witness. They have to disclose opinions to us at least 30 days before trial.

This is what was disclosed and there's nothing about it in there.

[PROSECUTOR]: Concerning sexual abuse. It gives the reasons in here from the reports. He is testifying as to how he came to those conclusions based on the reviews he was given in there.

Now, you brought up a few topics with some of these people that I'm delving into with him given the fact that he is an expert.

[DEFENSE COUNSEL]: It doesn't --

[PROSECUTOR]: It's permissible, * * *

[DEFENSE COUNSEL]: No, it's not. I brought up these things. And you can bring it up with fact witnesses, but you cannot bring it up with an expert witness unless you've disclosed those opinions to me in advance.

That's what the rules say. This is what's disclosed, Your Honor, if you wanted to read the whole thing, you find anything about video pornography --

THE COURT: Hold on.

* * *

THE COURT: All right. Now, I have had an opportunity to review here at the sidebar a report dated September 16, 2019.

The report does not specifically say anything about watching pornography. I think that was the nature of [the prosecutor's] question, whether that would be surprising in a child who is suspected to be a victim of sexual abuse.

So, [prosecutor], state for the record, I guess, what your position is.

* * *

[PROSECUTOR]: The question is based on his expertise as a sexual -- it's not directed towards [A.W.], it's towards his experience in sexual abuse cases.

[SECOND PROSECUTOR]: My point was I think he's being asked a question as an expert in the field of child sexual abuse as in general matters much like as many of the other matters that have been explored to this point time [sic].

And it's appropriate. It doesn't go to his ultimate opinion or conclusion. His ultimate opinion or conclusion about which he will testify has not even been addressed yet.

But this is just as to general matters within his knowledge as an expert in the field of child sexual abuse designed to aid the jury in the understanding of child sexual abuse.

[DEFENSE COUNSEL]: Nevertheless, he's an expert. He's not a fact witness. He doesn't know a single fact based own [sic] observation.

So he's got to stick to the rules regarding experts. And if he's going to give an opinion whether it's general or specific, it's got to be disclosed in advance so that I can prepare.

I would have had my own expert prepare rebuttal for that, but I couldn't because it's not disclosed. They just can't sandbag on an issue like this and bring their expert in and claim that he's allowed to say opinions if he doesn't use the girl's name. He's giving opinions and they're not disclosed.

* * *

THE COURT: It sounds like the opinion is based upon his general knowledge. It's not based on this specific child to the extent that watching pornography and watching pornographic videos has been discussed repeatedly throughout this case.

Case No. 20 CO 0002

I'm going to let him answer the question and you can cross him on it. Thank you.

(11/7/19 Tr., pp. 597-600.)

**{¶37}** Following this exchange and court ruling, the prosecutor then restated the question to Dr. McPherson:

Q. There's been some talk in here that the -- there was viewing -- dealing with some websites dealing with sex and porn. Given your training and experience, is that surprising behavior for a child sexual assault victim?

A. Well, it would depend on the child, specifically the age. If it was 3- or 4-year-old or a 5-year-old child, I wouldn't necessarily expect them to look up something about what happened to them in that manner.

But if you're talking about someone older, 8, 9, 10, 12, not every case does the victim look up on the internet, but it's not uncommon for children, if they don't understand what's going on, to seek information out.

(11/7/19 Tr., p. 601.)

**{¶38}** Appellant argues that Dr. McPherson's answer went to a main issue in this case: whether A.W. may have viewed pornography because she was a victim of sexual abuse. Appellant claims the testimony had the effect of bolstering A.W.'s credibility with the jury, by supporting the idea that she was not fabricating her allegation of abuse to avoid being punished by her father for viewing pornography. The state counters that Dr. McPherson did not actually answer the question asked by the prosecutor; whether it

would be surprising that a child victim of sexual abuse would view pornography. Instead, Dr. McPherson offered a general observation that an older child might seek out information when they encounter something they do not understand rather than one aimed specifically at A.W.'s conduct and the allegations of sexual abuse.

**{¶39}** Dr. McPherson's written report submitted in this case did not contain any conclusions or expert opinion regarding A.W.'s viewing of pornography and any relationship to her sexual abuse. Appellant argues the report and the doctor's testimony must be excluded on this basis. However, this is not an accurate reading of the case law on the issue. *Boaston* held that although the trial court typically has discretion regarding admission of evidence, Crim.R. 16(K) limits that discretion and requires an expert report be excluded if it is not disclosed to opposing counsel. However, that is not what occurred in this case. The written report was disclosed in accordance with the rule, but the state asked the expert a question at trial that went outside of the scope of that report.

**{¶40}** While Appellant is incorrect that this line of questioning should result in exclusion of the expert's report, we do find the question asked by the state is problematic for two reasons. As already stated, it goes beyond the scope of Dr. McPherson's report, hampering defense counsel's ability to prepare an adequate defense as to this issue. Second, depending on Dr. McPherson's answer, it could be seen as an improper attempt to bolster A.W.'s credibility. Having a child abuse expert testify that A.W. was watching pornography because she was abused could potentially improperly influence the jury on the matter.

**{¶41}** However, the record shows Dr. McPherson's actual answer to the question was clearly general in nature. He spoke generally about the likelihood of children in

Case No. 20 CO 0002

specific age groups seeking information on the internet. He did not mention A.W. or relate his opinion to the case at issue.

**{¶42}** Applying the analysis established in *Harris*, the question posed by the state regarding A.W.'s pornography viewing was improper, as it exceeded the scope of the expert's report. However, Dr. McPherson's response was general in nature and did not specifically address A.W.'s conduct in this case. Appellant has not demonstrated that he was prejudiced by the question or that this single question affected the verdict. When we view the record without including this question by the state and Dr. McPherson's general observation in response, the record is replete with evidence presented by the state to support the verdict. Testimony from multiple witnesses was presented to the jury. Most importantly, the victim, herself, testified in this matter fairly extensively and addressed the issue in question both on direct examination and on the defense's cross-examination. Hence, while it appears the trial court erred in allowing the state to question Dr. McPherson about a matter not addressed in his report, this error is harmless beyond a reasonable doubt. This record reveals the question and generalized answer did not affect the substantial rights of Appellant. The remaining evidence presented at trial established Appellant's guilt beyond a reasonable doubt. Appellant is not entitled to a new trial on this issue. His second assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 3

The trial court committed plain error when it allowed the jury to hear investigating detectives state that "children don't lie," and conversely, indicate that Mr. Fowler was lying, during a recorded interview of Mr. Fowler that was played for the jury and made a trial exhibit for the State. Fifth and

Case No. 20 CO 0002

Fourteenth Amendments, United States Constitution; Article 1, Sections 10 and 16, Ohio Constitution. (State's Ex. 1; Tr. Vol. 2, p. 403.)

**{¶43}** Appellant challenges the admission of portions of the videotaped interview between Det. Wycoff, Det. Walker, and Appellant. Appellant initially contends the trial court erred in allowing the jury to hear Det. Walker's interview statements regarding Appellant's truthfulness. After Appellant was informed of the allegation made by A.W., Det. Walker said, "I think something did happen … I mean watching you while we're interviewing you and your non-verbal cues, I have some concerns." (State's Ex. 1, at 28:22 – 28:30.) The state argues these statements were admissible, as Det. Walker was permitted to remark on Appellant's demeanor.

**{¶44}** Defense counsel did not object to these statements or seek to have them redacted from the interview prior to trial and before the videotaped interview was played for the jury. Therefore, we review this matter for plain error. Crim.R. 52(B); *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 89-90. Pursuant to Crim.R. 52(B), a reviewing court has the discretion to correct plain errors or defects that affect a defendant's substantial rights. *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. However, the defendant has the burden of proof to demonstrate plain error on the record and must show an error that constitutes an obvious defect in the trial proceedings. *Id.* Further, a defendant must demonstrate a reasonable probability that the error resulted in prejudice, impacting a substantial right which affected the outcome of the trial. *Id.*

**{¶45}** "A police officer's opinion that an accused is being untruthful is inadmissible." *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E. 2d 31, ¶ 122

(citations omitted.) "[J]urors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their perceived experiences with other cases." *State v. Walker-Curry,* 8th Dist. Cuyahoga No. 106228, 2019-Ohio-147, ¶ 14, citing *State v. Potter,* 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 38. This does not automatically result in error, however.

**{¶46}** We first note that the statements by both detectives Walker and Wycoff were made during a police interrogation of a suspect, and were not made during the detectives' direct testimony at trial. Police statements made during an interrogation intended to get the suspect to tell the truth are not coercive in nature. *State v. Hopfer,* 112 Ohio App.3d 521, 547-548, 679 N.E.2d 321 (2d. 2000). However, Det. Walker's statements regarding Appellant's body language in the face of the allegations could be seen by the jury as an expression on the part of Det. Walker of his doubt about Appellant's credibility. Assuming arguendo that it may have been error to admit certain portions of this video, we turn to whether this error was prejudicial given the other evidence in the record. "Nonconstitutional error is harmless if there is substantial other evidence to support the guilty verdict." *State v. Webb,* 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994). In addition to the videotaped police interview, the state presented the testimony of Beverly, the intake investigator for Children's Services. Beverly opined that, in her experience, Appellant's body language and responses were not consistent with the vehement denials typically exhibited by an accused. The victim in this case testified, as did an expert in child abuse cases. Most importantly, Appellant also testified on his own behalf. He testified on both direct and cross-examination regarding his responses and demeanor during the police interview when he was informed of A.W.'s allegation.

Through this testimony, the jury was able to assess the credibility of Appellant and ultimately determine his veracity for themselves. Considering the other evidence in the record, even if the inclusion of Det. Walker's statements about Appellant's truthfulness rises to the level of error, this error can only be called harmless under the facts of the case, as there is no reasonable probability that the comments contributed to Appellant's conviction. *State v. Morris,* 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 28.

**{¶47}** Appellant also challenges another statement made by Det. Wycoff during the interview. When Det. Wycoff told Appellant about A.W.'s allegation of abuse, Det. Wycoff stated, "seven-year-olds don't …won't lie about things like that[.]" (State's Ex. 1, at 10:35-10:50.) Several minutes later Det. Wycoff states: "My real concern is that a seven-year-old girl is not going to make something up like that." (State's Ex. 1, at 18:23 – 18:28.) The state asserts Det. Wycoff was not attacking Appellant's credibility but was providing Appellant the opportunity to "deny the conduct and give an explanation." (Appellee's Brf., p. 12.)

**{¶48}** In *State v. Boston,* 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), modified on other grounds by *State v. Dever,* 64 Ohio St.3d 401, 596 N.E.2d 436 (1992), the Ohio Supreme Court held,"[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant" because such testimony "acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." *Id,* at 128-129, quoting *State v. Eastham,* 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988) (H. Brown, J. concurring). However, courts have limited *Boston* to only expert testimony. Det. Wycoff was not testifying as an expert. Further, as earlier discussed, the statements at issue were made

Case No. 20 CO 0002

during a police interrogation and not in testimony at trial. Defense counsel challenged Det. Wycoff on cross-examination regarding the statements at issue, and the detective admitted that he was wrong to address Appellant in that fashion. The jury certainly had the opportunity to determine Det. Wycoff's credibility. However, because Det. Wycoff was the investigating officer, it is possible the jury perceived statements he made during his interrogation of Appellant as expert in nature, based on his experience as a police officer. *State v. Walker-Curry,* 8th Dist. Cuyahoga No. 106228, 2019-Ohio-147, ¶ 14, citing *State v. Potter,* 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 38.

**{¶49}** Again, even assuming it was error to admit this portion of the video where these statements were made, Appellant has failed to demonstrate that the error affected any substantial right. Defense counsel cross-examined Det. Wycoff at trial regarding these statements. Additionally, the jury heard Appellant's testimony at trial as to the reasons for his behavior during the interview, stating that he was simply too stunned to react. Moreover, A.W. testified at trial regarding every aspect of her allegations. A.W. was questioned extensively on cross-examination as to whether she was telling the truth or whether she accused Appellant in order to avoid her father's punishment for watching pornography. The jury had the opportunity to make an independent determination as to both the child's credibility and Appellant's veracity. Other evidence presented, including the extensive testimony at trial, enabled the jury to properly make their own determination regarding both Appellant's truthfulness and A.W.'s. Coupled with the overwhelming evidence of guilt as earlier discussed, this record reveals the admission of the questionable videotaped statements does not rise to the level of plain error.

**{¶50}** Appellant's third assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 4

The cumulative effect of trial-court errors denied Mr. Fowler his right to a fair trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution. (Judgment Entry, Nov. 1, 2019; Tr. Vol. 4, pp. 742-743; Defendant's Ex. C; Tr. Vol. 3, pp. 597-600; State's Ex. 1; Tr. Vol. 2, p. 403.)

**{¶51}** Separate errors that may not individually rise to the level requiring reversal may, nonetheless, violate a defendant's right to a fair trial when considered together. *State v. Madrigal,* 87 Ohio St.3d 378, 397, 721 N.E.2d 52 (2000). In order to affirm a conviction where there have been multiple errors, a reviewing court must find that the cumulative effect of the errors is also harmless beyond a reasonable doubt. *State v. Anderson,* 7th Dist. Mahoning No. 03 MA 252, 2006-Ohio-4618, ¶ 80, citing *State v. DeMarco,* 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987). If Appellant's substantial rights were not affected, or where the record reveals that the errors did not contribute to the conviction, the judgment of the trial court should be affirmed. Crim.R. 52(A); Evid.R. 103(A); *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 51.

**{¶52}** Appellant contends that even if we find his claimed errors are harmless, the cumulative effect of these errors violated his right to a fair trial. As earlier discussed, the trial court did not err in excluding Appellant's expert witness testimony, as her written report contained multiple conclusions which improperly called into question the veracity of the child-victim and went well beyond the scope of her purported expertise. Evid.R. 702. While the trial court did err in allowing the state to ask a question of Dr. McPherson

that exceeded his expert report, Dr. McPherson's answer amounted to a general statement of possibility, and was not directed to A.W.'s conduct specifically. Thus, it was harmless as a matter of law. Detectives Wycoff and Walker did make statements appearing to attack Appellant's veracity during their investigative video that was played for the jury. No objection was made until after the video was played. Both detectives explained their investigative technique and did not directly attack Appellant's credibility in their testimony. To the extent the unredacted video questioning may have been erroneously shown to the jury, this was harmless as a matter of law. Hence, Appellant has not shown any prejudice and cannot show any error, either cumulative or individual, requiring reversal of his conviction in this case.

Appellant's fourth assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 5

The trial court erred when it imposed a mandatory sentence upon Mr. Fowler. (Sent. Tr. 34; Judgment Entry, Feb. 3, 2020.)

{¶53} Appellant contends the trial court's imposition of a mandatory prison term was contrary to law. Appellant argues that a resentencing hearing is required. The state concedes that the mandatory nature of the sentence is contrary to law but maintains that the error can be corrected via a *nunc pro tunc* entry.

{¶54} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Pursuant to R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or

Case No. 20 CO 0002

may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either: (1) that the record does not support certain specified findings; or (2) that the sentence imposed is contrary to law.

**{¶55}** R.C. 2907.05(C)(2) establishes that a conviction for gross sexual imposition pursuant to R.C. 2907.05(A)(4) is a third-degree felony for which "there is a presumption that a prison term be imposed." *State v. Bevly,* 142 Ohio St.3d 41, 2015-Ohio-475, 27 N.E.3d 516, ¶ 8. The maximum prison term for the offense is 60 months. R.C. 2929.14(A)(3). R.C. 2907.05(C)(2)(a) purports to elevate the punishment to a mandatory prison term if there is corroborating evidence of the crime; however, the Ohio Supreme Court has deemed that provision to be unconstitutional. *Bevly,* paragraphs one and two of the syllabus.

**{¶56}** At sentencing, defense counsel informed the trial court that the mandatory sentencing provision did not apply because neither of the subsections of R.C. 2907.05(C)(2) were present, but did not reference the *Bevly* holding. When imposing sentence the trial court stated:

> I am not going to grant community control sanction or a 30-day residential
> sanction. The way I read the statute, I do believe it is incumbent upon me
> to impose a mandatory term of incarceration, which I am going to do here
> today.

(1/31/20 Tr., p. 34.)

**{¶57}** In *Bevly*, the Ohio Supreme Court held:

1. Because there is no rational basis for the provision in R.C. 2907.05(C)(2)(a) that requires a mandatory prison term for a defendant convicted of gross sexual imposition when the state has produced evidence corroborating the crime, the statute violates the due-process protections of the Fifth and Fourteenth Amendments to the United States Constitution.

2. In cases in which a defendant has pled guilty, imposing a mandatory prison term pursuant to R.C. 2907.05(C)(2)(a) when corroborating evidence of the charge of gross sexual imposition is produced violates the defendant's right to a jury trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

*Id.*, paragraphs one and two of the syllabus.

**{¶58}** Although the trial court did not specify which statute it was reviewing in reaching its conclusion, it appears the trial court applied R.C. 2907.05(C)(2)(a), requiring mandatory prison time if corroborating evidence was presented at trial. However, as noted above, the *Bevly* Court held that R.C. 2907.05(C)(2)(a) violates the due process protections of the Fifth and Fourteenth Amendments to the United States Constitution. Thus, the presence or absence of corroborating evidence cannot be used to impose a mandatory sentence and is irrelevant for sentencing purposes. The imposition of a mandatory prison term in this matter was contrary to law. Appellant's sentence is vacated and the matter is remanded to the trial court for the specific purpose of resentencing pursuant to *Bevly.*

**{¶59}** Appellant's fifth assignment of error has merit and is sustained.

Case No. 20 CO 0002

<u>Conclusion</u>

**{¶60}** The trial court did not abuse its discretion in excluding the testimony of Appellant's proposed expert. While Dr. McPherson was erroneously asked a question regarding matters outside of his report, his answer was general in nature and did not rise to the level of prejudicial error. In addition, even if the comments of detectives Wycoff and Walker during their interview with Appellant may have been improperly admitted, this did not result in prejudice to Appellant and when considered alongside the other substantial evidence presented by the state, the statements did not result in plain error. Appellant had the opportunity to confront both detectives and the extensive testimony on the issue by the detectives, Appellant, and A.W. enabled the jury to independently determine the credibility of the witnesses and veracity of the allegations at issue. Appellant's conviction is affirmed. However, as the trial court improperly characterized Appellant's sentence as mandatory, the sentence imposed by the trial court is vacated and the matter is remanded to the trial court for resentencing consistent with this opinion.

Robb, J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's first, second, third and fourth assignments of error are overruled and Appellant's conviction is hereby affirmed. However, as the trial court improperly characterized Appellant's sentence as mandatory, his fifth assignment is sustained. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed in part and reversed in part. Appellant's sentence is vacated and we hereby remand this matter to the trial court for resentencing according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**

Case No. 20 CO 0002