[Cite as *State v. Walker-Curry*, 2019-Ohio-147.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106228**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ULOMA WALKER-CURRY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598191-D

**BEFORE:** Blackmon, J., E.T. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** January 17, 2019

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

By: Allen Vender
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Jennifer A. Driscoll
Jennifer King
Blaise D. Thomas
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


PATRICIA ANN BLACKMON, J.:

{¶1}   Uloma Walker-Curry ("Walker-Curry") appeals her convictions for aggravated murder and conspiracy and assigns the following errors for our review:

I.   The trial court erred when it allowed a police officer to testify that Uloma Walker-Curry was being deceitful on the recording of the 911 call.

II.   The trial court violated Uloma Walker-Curry's due process rights and abused its discretion when it denied her motions for mistrials.

{¶2}   Having reviewed the record and pertinent law, we affirm.   The apposite facts follow.

**{¶3}** On the night of November 3, 2013, William Walker ("Walker") was fatally shot in his driveway. Almost two years later, on September 14, 2015, Walker's wife, Walker-Curry, was charged with aggravated murder, conspiracy, and other crimes associated with Walker's death. At the time of Walker's murder, the couple had been married for approximately four months. The following people were also indicted relating to the murder: Walker-Curry's daughter, J.H.;[1] J.H.'s boyfriend, Chad Padgett; Padgett's cousin, Christopher Hein; and Hein's friend, Ryan Dorty.

**{¶4}** The prosecution's theory was that Walker-Curry hired her daughter's boyfriend, Padgett, to kill Walker so Walker-Curry could collect the insurance money. Ultimately, Padgett contacted Hein, and Hein recruited Dorty, who hid behind a garbage can and shot Walker when Walker was approaching his front door.

**{¶5}** All four co-conspirators eventually pled guilty to crimes related to Walker's murder. Walker-Curry's case went to trial, and on July 7, 2017, a jury found her guilty on all counts. On August 8, 2017, the court sentenced Walker-Curry to life in prison without the possibility of parole on the aggravated murder, to run concurrent to 11 years in prison for the conspiracy, to run consecutive to six years for the accompanying firearm specifications. It is from these convictions that Walker-Curry appeals.

### Police Officer's Testimony that an Accused is being Untruthful

**{¶6}** In *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, the Ohio Supreme Court held that a police officer's opinion that an accused is being untruthful is inadmissible at trial. In *Davis*, a detective testified that the defendant "was being very deceptive," and the court held that this testimony was erroneously admitted into evidence, because

---

[1] J.H. was a minor at the time, and she was charged in juvenile court.

it "expressed [the detective's] opinion that [the defendant] was being untruthful." *Id*. at ¶ 123. However, the *Davis* court further held that this "isolated comment did not result in plain error" because "[t]here was overwhelming evidence of Davis's guilt." *Id.*

{¶7} In the case at hand, Walker-Curry argues that the trial court erred when it allowed Cleveland Police Detective Thomas Lynch ("Det. Lynch") to testify that she was being deceitful during the 911 call she made after Dorty shot Walker. A recording of this call was played for the jury during Walker-Curry's trial, and Det. Lynch testified that he reviewed the call as part of his investigation.

{¶8} The state, on the other hand, argues that Det. Lynch's testimony was properly admitted under Evid.R. 701, which states as follows: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Violations of Evid.R. 701 are subject to harmless-error review under Crim.R. 52(A). *See State v. Lenard*, 8th Dist. Cuyahoga Nos. 105342 and 105343, 2018-Ohio-2070, ¶ 14-15.

{¶9} Det. Lynch testified that he has been a police officer for 22 years, a detective for 14 years, and a homicide detective for four years. As part of his investigation into Walker's murder, Det. Lynch listened to the 911 call that Walker-Curry made on November 3, 2013, with the goal of "looking for indicators of deception in the call." Det. Lynch explained that "[t]he biggest indicators in this call when I reviewed it is the term 'please' used alone by itself is an indicator of deception. * * * She used it 17 times. She used it 17 times in this call." Asked if Walker-Curry ever responded to "direct questions for information," Det. Lynched answered, "No." Asked if she ever gave "facts that the dispatcher was asking for in the calls," Det. Lynch answered, "No. She was asked four times who shot your husband before she finally answered 'I don't know.'"

Det. Lynch further testified that Walker-Curry did not describe what she heard that night, and she deflected most of the direct questions the dispatcher asked.

> A common deceptive indicator again is — * * * When asked a question by a dispatcher, the caller starts talking to the person that is at the scene that they're calling for. In this case, "I love you, I love you, I love you" was noted being said by Uloma Walker-Curry when asked a question by the dispatcher.

> Also another red flag, deceptive indicator, is repetition. When a caller says things over and over and over again, that in itself is a deceptive indicator.

> * * *

> Eventually she said he was shot. She said he was shot when the dispatcher was trying to ascertain where he had been shot, it's possible that she didn't understand the question, but she said in the driveway. The dispatcher had to ask again, [no,] what part of his body, and she was unable to provide that information or unwilling to provide that information.

> * * *

> I didn't count the "I love you's." "Please" is the big one. "Please is — when we listen to those calls, "please" alone by itself is a red flag indicator.

{¶10} At this point during Det. Lynch's testimony, defense counsel moved for a mistrial. Specifically, Walker-Curry's attorney argued that "[t]here's no basis for this psychological analysis on behalf of the detective whatsoever. We were never provided with an expert report as required by the rules that he was going to give an opinion on psychology and sociology, Your Honor, so we absolutely move for a mistrial of this case."

{¶11} The court overruled Walker-Curry's motion for a mistrial, stating the following: "The detective is testifying in his capacity as a homicide detective in the analysis that goes into * * * determining who's a suspect in a case, and it's based on his years of experience. And I don't think that anybody objected to his qualifications as a homicide detective in what they do in the hours of their investigation."

{¶12} Upon review, we find that Det. Lynch was not testifying as an expert witness. Rather, he was testifying as a lay witness, and the admissibility of his opinion must be analyzed under Evid.R. 701. Det. Lynch testified about his perception of Walker-Curry's 911 call, based on his "observations and insights as a homicide investigator," which satisfies the first prong of Evid.R. 701. *See, e.g., State v. Grajales,* 5th Dist. Delaware No. 17CAC030020, 2018-Ohio-1124, ¶ 64 (the sheriff's deputy "testified as a lay witness to opinions based on his experience as a police officer, his previous investigations, and his perception of evidence at issue").

{¶13} As to the second prong of Evid.R.701, whether the testimony at issue is "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue," Ohio courts have determined that a police officer's opinion testimony may be admissible to explain a fact at issue even when it is based on specialized knowledge. *See State v. Calhoun*, 8th Dist. Cuyahoga No. 105442, 2017-Ohio-8488, ¶ 36 (officer's testimony regarding cell phone image extraction admissible when it was based on his training and experience as a "certified mobile examiner"); *State v. Johnson*, 7th Dist. Jefferson No. 13JE5, 2014-Ohio-1226, ¶ 57 (detective's testimony as to gang activity was permissible under Evid.R. 701 based on detective's personal knowledge and experience in the field); *State v. McClain*, 6th Dist. Lucas No. L-10-1088, 2012-Ohio-5264, ¶ 13 (detective's testimony that quantities of narcotics recovered during the execution of the search warrant suggested that they were for sale as opposed to personal use was admissible under Evid.R. 701 as lay person opinion testimony because his testimony was based on his training and experience).

{¶14} In the case at hand, however, Det. Lynch opined that Walker-Curry was not being truthful. This testimony is inadmissible under *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31.

In our system of justice, it is the fact finder, not the witness, who bears the burden of assessing the credibility and veracity of the witnesses. Moreover, jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their perceived experiences with other cases.

*State v. Potter*, 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 38.

{¶15} Accordingly, we find that Det. Lynch's testimony that Walker-Curry's 911 call contained "deceptive indicators" is problematic, and the court should not have allowed the jury to hear the detective's opinion about Walker-Curry's veracity. We turn to whether this error was harmless given the other evidence in the record. *See State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994) ("Nonconstitutional error is harmless if there is substantial other evidence to support the guilty verdict").

{¶16} All four co-conspirators testified at Walker-Curry's trial.

{¶17} J.H., Padgett, and Hein testified consistently that Walker-Curry said she wanted her husband, Walker, killed for money. All three testified that Walker-Curry offered to pay $10,000, with $1,000 up front, for killing Walker. Padgett testified that he bought a gun from Hein for this purpose. All three also testified about a failed attempt to kill Walker in October 2013, which was arranged by Walker-Curry. In this failed attempt, Padgett was to be the trigger man, but the plans fell through.

{¶18} According to J.H., Padgett, and Hein, Walker-Curry arranged the second attempt on Walker's life for November 3, 2013, by calling J.H. and telling her it was time to come home. This was a signal that Walker left the house to pick up Walker-Curry's dinner, and Padgett should head to Walker's house to wait for him and then kill him.

{¶19} Dorty testified that he was contacted by Hein and Padgett on November 3, 2013, and asked if he wanted "to make some money." Dorty said, "Yeah." Padgett and another person picked up Dorty and they drove to Walker's house. Dorty hid behind a garbage can and waited

until Walker pulled into the driveway. Walker got out of his car and Dorty shot him as he approached the side door of his house. Dorty was supposed to get $1,000, but Padgett only gave him $800. Dorty further testified that he got the gun he used to kill Walker from Padgett.

{¶20} The state presented forensic evidence that four 9 mm casings were recovered in Walker's driveway and two bullets were recovered from Walker's body. The bullets and casings were determined to have been fired from a Hi-Point gun, which is the same type of gun that Hein sold Padgett. Furthermore, the DNA found on the casings matched Padgett's DNA profile.

{¶21} Det. Lynch and another police officer testified about cell phone records, including calls and texts between Walker-Curry, J.H., Padgett, Hein, and Dorty, which corroborated the co-conspirators' testimony in this murder-for-hire scheme. The state also presented evidence that Walker-Curry cashed a check for $1,000 and gave the money to Padgett. The $1,000 check was dated November 1, 2013, and was drawn from Walker's account.

{¶22} Det. Lynch also testified that he received a tip from a man named Daniel Toney. Although Toney was reluctant to give the police details, he provided Det. Lynch with Padgett's and J.H.'s names and phone numbers in relation to Walker's murder.

{¶23} The state also presented the testimony of Enrique Ramos, who stated that in November or December 2013, he was in his garage working on a car when his friend Isaiha Solomon began talking about how Padgett and Hein initially attempted to recruit Solomon to murder Walker, but Solomon declined the solicitation. Solomon also stated that Padgett's girlfriend and Padgett's girlfriend's mom were involved. Ramos was so "disgusted" by the conversation that he recorded it on his cell phone and eventually reached out to the Cleveland police about what he heard. This recording of Solomon saying that he "was their first choice" to "carry out the hit" on Walker was played for the jury. Hein's and Det. Lynch's testimony corroborated that Padgett initially asked Solomon to murder Walker.

**{¶24}** Finally, the state introduced into evidence two letters that Walker-Curry wrote after Walker's murder and in the presence of Maclin Hines, Jr., who is Walker-Curry's ex-boyfriend and J.H.'s father.   Walker-Curry's first letter stated, in part, as follows: "I, Uloma Curry-Walker,[2] hereby told Chad Padgett to kill William Walker * * *."   Walker-Curry's second letter was addressed to her son, telling him that she was sorry and "to be a good man."   J.H. and her father testified that Walker-Curry wrote these letters.   J.H. recognized her mother's handwriting, and Hines saw Walker-Curry write the letters.

**{¶25}** We are aware that the bulk of the evidence against Walker-Curry comes from her co-conspirators.   However, the court instructed the jury as follows regarding the testimony of accomplices or co-conspirators:

> You have heard testimony from [Dorty, Hein, Padgett, and J.H.], persons who pled guilty to or were accused of the same crime charged in this case and are said to be accomplices.   An accomplice is one who purposefully or knowingly assists or joins another in the commission of a crime.
>
> Whether [Dorty, Hein, Padgett, and J.H.] were accomplices and the weight to give their testimony are matters for you to determine from all of the facts and circumstances in evidence.   They testimony of an accomplice that is supported by other evidence does not become inadmissible because of their complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect their credibility and make their testimony subject to grave suspicion  and require that it be weighed with great caution.   It is for you as jurors in the light of all the facts presented to you and from the witness stand to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
>
> An accomplice may have a special motive in testifying, and you should carefully examine an accomplice's testimony and use it with great caution and view it with great suspicion.

**{¶26}** Pursuant to R.C. 2923.03(D), when an accomplice testifies against a defendant, the court shall instruct the jury that this testimony is "subject to grave suspicion."   Although not a

---

[2]At trial, the defendant clarified that her name is Uloma Curry-Walker.   However, the indictment and case caption, both in the trial court and this court, refer to her as Uloma Walker-Curry.

separate assigned error, we find that the court complied with R.C. 2923.03(D) in instructing the jury. Hein's, Padgett's, and J.H.'s testimony is consistent that Walker-Curry paid Padgett to kill her husband. She planned the shooting more than once. The details of the witnesses' testimony are consistent and corroborated by other evidence. In reviewing the trial court's error and reading the entire record, we find that the inclusion of Det. Lynch's testimony about Walker-Curry's deception was harmless given the considerable evidence of her guilt.

{¶27} Accordingly, Walker-Curry's first assigned error is overruled.

## Motion for a New Trial

{¶28} Pursuant to Crim.R. 33(A)(1), it is within the trial court's discretion to grant a defendant's motion for a new trial if there is an "abuse of discretion by the court, because of which the defendant was prevented from having a fair trial * * *."

{¶29} In the instant case, Walker-Curry argues that the court should have declared a mistrial for two reasons. First, that she was prevented from having a fair trial based on the admission of Det. Lynch's testimony that she was deceitful in her 911 call. We reviewed and rejected a similar argument under Walker-Curry's first assigned error. To the extent that the same argument is repeated here, we find no error in the court's failing to declare a mistrial.

{¶30} Second, Walker-Curry argues that the court erred by not granting her motion for a mistrial based on her ex-boyfriend's testimony that, in his opinion, she was guilty of Walker's murder. Maclin Hines, Jr., testified that he has two children with Walker-Curry, and that he and Walker-Curry were "pretty much common law" husband and wife from approximately 1991 until 2001. Hines testified as follows about how he reacted when he found out Walker "was shot and killed in his own driveway": "To be honest, it didn't surprise me. It didn't. * * * I just had a — I just knew in my heart, I knew in my heart that Uloma had something to do with it." After

defense counsel objected, the court struck the testimony from the record and admonished the jury to disregard Hines's statement.

{¶31} Hines continued to testify that he spoke with Walker-Curry and J.H. (who is his and Walker-Curry's daughter) about how Walker died.

> Q:  Did anyone in that discussion admit to being the person behind [Walker's] death?
>
> A:  Yes.
>
> Q:  Who?
>
> A:  Uloma Curry.
>
> Q:  Tell us about that.
>
> A:  Well, she was actually complaining to me when she was saying it — it was like a complaint, like she was saying that they wasn't sleeping in the same bed, they weren't having relations, and —
>
> Q:  They weren't having sex?
>
> A:  They wasn't having sexual relations at all.   And her quote was pretty much — her quote was, "He was just getting on my nerves."
>
> Q:  He was getting on her nerves.   So then what?
>
> A:  Right.   Then and there, before — because I knew my daughter was being questioned at the time, you know what I mean?   I knew my daughter was being questioned, so in my mind I'm saying to myself I have to get [Walker-Curry] to go down there and confess.   I have to.

{¶32} Defense counsel objected to this line of testimony and moved for a mistrial on the basis that Hines was improperly "offering opinion of her guilt."   The court overruled the motion, told the prosecutor to advise Hines "to refrain from any speculation, any opinion, and just stick with the facts as to what happened," and noted that any further objections as to opinion testimony would be sustained.   The prosecutor told Hines, in open court and in front of the jury, the following: "Your beliefs, your opinions are not what we're here to hear.   What we're here to hear

are facts and statements of Uloma that you were present for  * * * and things that you did with her together as we're talking about such as coming down to the homicide unit.  Do you understand? * * * So please don't offer your beliefs or your opinions. * * * I'm looking for facts."  Hines testified that he understood.

{¶33} On appeal, Walker-Curry argues that this testimony was irrelevant and extremely prejudicial, "as it went to the core issue in this case, which was whether Walker-Curry was guilty."  Walker-Curry further argued that the instructions the court gave to the jury "were not sufficient to cure the prejudice from these comments."  To support this argument, Walker-Curry cites to *State v. Brown*, 2d Dist. Montgomery No. 24420, 2012-Ohio-416, ¶ 44, in which the court found that the "cumulative effect of the improper admissions and deficient performance of defense counsel undermines any confidence in the outcome and rendered it manifestly obvious that a fair trial was no longer possible."  The court further noted in *Brown* that "the instant case does not present a situation where the defendant was convicted by overwhelming evidence."  *Id.* at ¶ 45.

{¶34} The state in the case at hand, argues that Hines's statements were brief and the court immediately gave the jury a curative instruction, which "greatly limited any potential error."  To support this argument, the state cites to *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995), which held the following:

> The grant or denial of an order of mistrial lies within the sound discretion of the trial court.  A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.  Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.  In this case, the reference to the defendant's prior arrests was fleeting and was promptly followed by a curative instruction.  The trial court did not abuse its discretion in failing to order a mistrial.

(Citations omitted.)

**{¶35}** In *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), the Ohio Supreme Court held that "[w]e presume that the jury followed the court's instructions, including instructions to disregard testimony." Additionally, this court has held that "[w]here the trial court has sustained an objection and provided a curative instruction to the jury, we must presume the jury followed the trial court's instruction." *State v. Sailor*, 8th Dist. Cuyahoga No. 83552, 2004-Ohio-5207, ¶ 34.

**{¶36}** Upon review, we cannot say that the court abused its discretion by denying Walker-Curry's motion for a mistrial. This is not a case of cumulative error nor is it a case of deficient performance by defense counsel. Walker-Curry has failed to show that a fair trial was no longer possible. Assuming we disregard Hines's opinion of her guilt, there is substantial evidence against her concerning Walker's murder. Accordingly, Walker-Curry's second assigned error is overruled.

**{¶37}** Convictions affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR