[Cite as *S. Euclid v. Freeman*, 2026-Ohio-2406.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF SOUTH EUCLID, | : | |
| Plaintiff-Appellee, | : | No. 115442 |
| v. | : | |
| ABIODUN FREEMAN, JR., | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 25, 2026

---

Criminal Appeal from the South Euclid Municipal Court
Case No. TRD 2500423A

---

### *Appearances:*

Michael Lograsso, South Euclid Director of Law, and Anthony Bondra, Assistant Prosecutor, *for appellee.*

Abiodun Freeman, Jr*., pro se.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Abiodun Freeman, Jr. ("Freeman") appeals from the judgment of his convictions for failure to stop after an accident and overtaking and passing on the right. On appeal, Freeman challenges (1) the sufficiency of the evidence supporting his convictions, (2) the trial court's findings

of guilt, alleging that his convictions are against the manifest weight of the evidence, (3) alleged discovery violations by the City of South Euclid ("City"), and (4) the admission of certain evidence allowed by the trial court.

{¶ 2} After a thorough review of the record and applicable law, we overrule each assignment of error. The convictions are affirmed.

## I. Background Overview

### A. Relevant facts

{¶ 3} At approximately 8:00 a.m. on February 25, 2025, Brittany Cordova ("Cordova") left her house in South Euclid, intending to head to Case Western Reserve University ("CWRU") where she was attending classes in the university's Master of Nursing program. She testified that as she was backing out of her driveway, she looked both ways and observed a white vehicle "way down past the intersection prior to the stop sign" and believed that she had "ample time to back out of [her] driveway and safely exit." When she became parallel to the road, she noticed that the vehicle she had observed was approaching "very fast" and was not slowing down. She testified that she honked her horn and then the vehicle slammed into the front right of her car. Cordova explained that when the vehicle struck her car, it jolted her and ricocheted her vehicle to the left. She testified that she was 100% certain that the vehicle struck her car.

{¶ 4} After her vehicle was struck, Cordova continued towards school and called 911. She testified that the vehicle that struck her did not stop but, rather, "[blew] through the stop sign and drove away very, very fast." She testified that after

hitting her, the vehicle started driving erratically, weaving through traffic. Cordova testified that "at one point[, he] put on his right turn signal and then tried to juke left and then he, at one point after the car dealership, had taken a right turn down into a residential area and was going probably about 70 to 80 miles per hour[.]" She stated that it appeared that the vehicle was intentionally fleeing from her. Cordova stated that she chose not to follow the vehicle because it felt unsafe to do so.

{¶ 5} Cordova returned to her house where she met with Officer Ryan Krizmanic ("Officer Krizmanic") from the South Euclid Police Department. Cordova advised Officer Krizmanic what had occurred and provided him with the license plate number of the vehicle that had struck her vehicle. Officer Krizmanic testified that he ran the plate number through LEADS and obtained Freeman's name and information, which contained possible phone numbers for him.

{¶ 6} Utilizing this information, Officer Krizmanic contacted Freeman and advised him that his vehicle had been in an accident earlier. Freeman told Officer Krizmanic that he was the only one that had been driving his vehicle that day but that he did not strike any other vehicles.

{¶ 7} Later that afternoon, Officer Krizmanic met with Freeman at city hall. At that time, Officer Krizmanic located Freeman's vehicle in the parking lot of the South Euclid Police Department and took photographs of Freeman's vehicle, which included a dark scuff mark on the front driver's side of the vehicle. Officer Krizmanic stated that based on the color of the mark and where it was located, it was a fairly

good indication that the mark was related to the accident involving Cordova's vehicle.

{¶ 8} Cordova testified that after the accident, she got an estimate for repairs to her vehicle, estimating that the damage was just over $5,000. The damage was all located on the right side of the vehicle.

**B. Trial**

{¶ 9} Freeman was issued a citation charging him with (1) failure to stop after an accident in violation of South Euclid Cod.Ord. 335.12, and (2) overtaking and passing upon right, in violation of South Euclid Cod.Ord. 331.04(b). Following a bench trial held on January 9, 2025, the court found Freeman guilty of both charges. He was sentenced to a pay a fine and a suspended jail sentence.

**C. Appeal**

{¶ 10} Freeman appeals his convictions, presenting six assignments of error for our review:

> 1. The trial court erred in convicting [Freeman] of failure to stop after an accident in violation of South Euclid Ordinance 335.12 because the city failed to present sufficient evidence, as a matter of law, that [Freeman] had knowledge that an accident had occurred — an essential element of the offense.
>
> 2. The trial court abused its discretion by permitting a police officer who did not witness the accident and who was not qualified as an expert to offer opinion testimony regarding the cause of the collision and the correlation between alleged vehicle damage, in violation of Ohio Evid.R. 701 and 702.
>
> 3. The trial court abused its discretion by admitting an unauthenticated insurance repair estimate as substantive evidence, where the document

constituted inadmissible hearsay, and no qualified witness testified to its preparation or accuracy.

4. The trial court abused its discretion by permitting the city to introduce photographs and an insurance estimate that were disclosed after the discovery deadline, without granting a continuance or imposing any remedial sanction under Crim.R. 16.

5. The trial court's convictions were against the manifest weight of the evidence, as the greater weight of the credible evidence – including the lack of significant damage to [Freeman's] vehicle and the speculative nature of the city's proof – demonstrates that the trier of fact lost its way and created a manifest miscarriage of justice.

6. The trial court erred in convicting [Freeman] of improper passing in violation of South Euclid Codified Ordinance 331.04(b) because the city failed to present sufficient evidence, as a matter of law, that [Freeman's] act of passing on the right was performed unsafely or under conditions that did not permit such movement in safety.

{¶ 11} For ease of discussion, we will address these assignments of error out of order.

## II. Law and Analysis

### First and Sixth Assigned Errors for Review — Sufficiency

{¶ 12} In his first and sixth assigned errors for review, Freeman argues that the evidence presented at trial was insufficient evidence to support his convictions for failure to stop after an accident and overtaking and passing on the right. After a thorough review of the record, we find that the evidence was sufficient to support the convictions for each of these offenses.

### A. Standard of Review

{¶ 13} "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Wilborn,* 2024-Ohio-

5003, ¶ 37 (8th Dist.), citing *State v. Cottingham,* ¶ 32 (8th Dist.).  In reviewing a challenge based on sufficiency, we must "'determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.'"  *State v. Webb,* 2025-Ohio-456, ¶ 9 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  A sufficiency review "is not a factual determination, but a question of law."  *State v. Jackson,* 2025-Ohio-109, ¶ 25 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 14} When reviewing the evidence, we must keep in mind that "[p]roof of guilt may be supported 'by circumstantial evidence, real evidence, and direct evidence, or any combination of all three, and all three have equal probative value.'"  *Wilborn* at ¶ 38, quoting *State v. Radano,* 2017-Ohio-1034, ¶ 35 (8th Dist.).  And although each type of evidence has their obvious differences, "those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence."  *Id.,* citing *State v. Cassano,* 2012-Ohio-4047, ¶ 13 (8th Dist.).  Our review of the evidence is not to determine "whether the state's

evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

## B. Analysis

### 1. Failure to Stop After an Accident

{¶ 15} Freeman was convicted of failure to stop after an accident in violation of South Euclid Cod.Ord. 335.12, which provides, in relevant part:

> (a)(1) In the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, *having knowledge of the accident or collision*, immediately shall stop the operator's motor vehicle at the scene of the accident or collision. The operator shall remain at the scene of the accident or collision until the operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to all of the following:
>
> A. Any person injured in the accident or collision;
>
> B. The operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision;
>
> C. The police officer at the scene of the accident or collision.

(Emphasis added.)

{¶ 16} Thus, the City was required to prove that Freeman had knowledge an accident or collision had occurred. Freeman claims that the evidence presented by the City was insufficient to support this "knowledge" element.

{¶ 17} "Circumstantial evidence is sufficient to prove the person driving a motor vehicle had knowledge of an accident or collision." *State v. Peterson,* 2024-Ohio-2435, ¶ 20 (9th Dist.). Thus, "the question of whether there existed in the

mind of the appellant an awareness of the probability that an accident or collision occurred, is to be determined from all the attendant facts and circumstances available." *State v. Hill,* 2010-Ohio-5356, ¶ 10 (8th Dist.).

{¶ 18} Cordova testified that when Freeman's vehicle struck her car, she described the impact as a "jarring." She testified that the vehicle slammed into the right front of her car with a jolt, causing her to jerk her vehicle to the left. She also testified that just before impact, she honked her horn. Due to the nature of collision, Cordova stated that Freeman would have felt or heard the impact.

{¶ 19} Cordova further testified that immediately after the crash, Freeman did not stop his vehicle. Rather he "[blew] through the stop sign and drove away very, very fast" and that Freeman's vehicle started driving erratically and weaving through traffic. Cordova testified that "at one point[, he] put on his right turn signal and then tried to juke left and then he, at one point after the car dealership, had taken a right turn down into a residential area and was going probably about 70 to 80 miles per hour[.]" Cardova stated that it appeared that the vehicle was intentionally fleeing from her. A reasonable factfinder could infer from Freeman's post-accident behavior, that he had been aware that an accident or collision had just occurred. This testimony alone is sufficient to support the trial court's finding that Freeman was aware that a collision had occurred. *See State v. Jones,* 2020-Ohio-3367, ¶ 71 (8th Dist.) (noting that "[a] conviction may rest solely on the testimony of a single witness, if believed, and there is no requirement that a witness' testimony

be corroborated to be believed"), citing *State v. Flores-Santiago,* 2020-Ohio-1274, ¶ 38 (8th Dist.).

## 2. Overtaking and Passing Upon Right

{¶ 20} Freeman was convicted of overtaking and passing upon right, in violation of South Euclid Cod.Ord. 331.04(b), which provides that "[t]he driver of a vehicle may overtake and pass another vehicle *only under conditions permitting the movement in safety.* The movement shall not be made by driving off the roadway." (Emphasis added.)

{¶ 21} Freeman argues that the evidence presented at trial was insufficient to demonstrate that he passed Cordova's vehicle under conditions that were unsafe. The City introduced testimony from Cordova and Officer Krizmanik and surveillance video from a Ring door camera to support its contention that the conditions were unsafe to pass.[1]

{¶ 22} At trial, Cordova testified that prior to backing out of her driveway, she observed Freeman's vehicle down the street, past the intersection prior to the stop sign, and believed that she would have ample time to pull out into the road. Officer Krizmanic testified that he was familiar with the stop sign and estimated that it would take a person driving the speed limit about 25 seconds to travel from the stop sign to where Cordova's vehicle was struck. By the time Cordova realized that Freeman's vehicle was traveling at a high speed, she was already parallel with the

---

[1] The record does not indicate that the surveillance video from the Ring door camera was ever marked as an exhibit or admitted into evidence at trial. Nor was it made part of the record on appeal. As such, our review does not include the purported video.

road.  She testified that she realized that the vehicle was not slowing down, so she honked her horn and that is when Freeman's vehicle collided with hers.

{¶ 23} Finally, Officer Krizmanic testified that the road was a two-lane road. The front left side of Freeman's vehicle struck Cordova's front right side of her vehicle, indicating that Freeman was passing her vehicle on her right, on a two-lane road, after she had pulled into the roadway.  And according to Cordova, Freeman was travelling at a high rate of speed when the accident occurred.  This evidence, if taken as true, was sufficient to support the finding that the conditions would not permit Freeman from safely passing Cordova's vehicle on the right, in support of his conviction for improper passing.

{¶ 24} Viewing the evidence in the light most favorable to the City, we find that Freeman's convictions for failure to stop after an accident and improper passing are supported by sufficient evidence.  Accordingly, Freeman's first and sixth assignments of error are overruled.

**Fifth Assigned Error for Review — Manifest Weight**

{¶ 25} In his fifth assigned error for review, Freeman alleges that his convictions are against the manifest weight of the evidence.  We disagree.

**A. Standard of Review**

{¶ 26} In contrast to a sufficiency challenge, a challenge with respect to the weight of the evidence concerns ""the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other . . . . Weight is not a question of mathematics, but depends on its effect in inducing

belief.'"'" *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387. The Ohio Supreme Court has stated that when conducting a manifest-weight review, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20. As such, a manifest-weight-of-the-evidence challenge will be sustained "'"only in the exceptional case in which the evidence weighs heavily against the conviction."'" *State v. Dodson,* 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### B. Analysis

{¶ 27} Freeman challenges both the credibility of Cordova's testimony and Officer Krizmanic's investigation since it took "less than ten minutes." He claims that it is "highly implausible" that Cordova's vehicle sustained $5,000 in damages, while his vehicle sustained "only a minor scuff and therefore could not support a finding that he had knowledge that an accident occurred."

{¶ 28} With respect to credibility of the witnesses, when conducting a review under a manifest-weight challenge, we are mindful of the presumption in favor of the finder of fact and, "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with

the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Parma Hts. v. Brett,* 2025-Ohio-4, ¶ 21 (8th Dist.), quoting *Z.C.* at ¶ 14. The underlying rationale of giving deference to the findings of the finder of fact is that "the finder of fact is in the 'best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony.'" *State v. Jones,* 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline,* 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 29} Freeman had the opportunity to cross-examine Cordova, as well as Officer Krizmanic with respect to his investigation. Here, the trial court was in the best position to judge Cordova's testimony and Officer Krizmanic's investigation, including his acknowledgment that it took him less than ten minutes to piece everything together.

{¶ 30} Freeman's claim that the damage to his vehicle does not support a finding that he had knowledge that an accident or collision had occurred ignores Cordova's testimony concerning Freeman's post-accident conduct, which included his erratic driving at high rates of speed and running through stop signs. It also ignores Cordova's testimony that just before impact, she honked her horn as a warning to Freeman. Taken together, we cannot say that the trial court clearly lost

its way in returning its verdicts of guilt with respect to failure to stop after an accident and improper passing.

{¶ 31} Accordingly, Freeman's fifth assignment of error is overruled.

**Second Assigned Error for Review – Opinion Testimony**

{¶ 32} In his second assigned error for review, Freeman claims that the trial court abused its discretion by allowing Officer Krizmanic to testify concerning the accident and the "relation of the scuff mark to the collision." After a thorough review of the record, we determine that the trial court did not err in allowing Officer Krizmanic from testifying on this point.

**A. Standard of Review**

{¶ 33} In his brief, Freeman cites Evid.R. 702, which governs expert opinion testimony. He also cites Evid.R. 701, which addresses lay opinion testimony. Here, Officer Krizmanic did not testify as an expert in this case. Rather, he provided lay opinion testimony pursuant to Evid.R. 701. "'Evid.R. 701 affords the trial court considerable discretion in controlling the opinion of lay witnesses.'" *State v. McDonald,* 2026-Ohio-558, ¶ 28 (8th Dist.), quoting *State v. Grajales,* 2018-Ohio-1124, ¶ 60 (5th Dist.). As such, "[w]e review a trial court's determination of the admissibility of lay witness opinion testimony for an abuse of discretion." *Id.,* citing *State v. Allen,* 2010-Ohio-9, ¶ 46 (8th Dist.).

{¶ 34} "The term 'abuse of discretion' means a ruling that is unreasonable, arbitrary, or unconscionable." *State v. McAlpin,* 2026-Ohio-148, ¶ 14. However, "[c]ourts do not have discretion to erroneously apply the law." *Shiftmed, L.L.C. v.*

*Westchester Parkway Consulting, L.L.C.,* 2025-Ohio-1554, ¶ 18 (8th Dist.), citing *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 39. We are reminded that "when applying the abuse-of-discretion standard 'we should not substitute our judgment for that of the trial court.'" *T.C. v. R.B.C.,* 2025-Ohio-1544, ¶ 10 (8th Dist.), quoting *Mills v. Mills,* 2025-Ohio-452, ¶ 28 (8th Dist.).

**B. Applicable Law**

{¶ 35} Evid.R. 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 36} To satisfy the first prong, the lay witness's opinion must be "'"one that a rational person would form on the basis of the observed facts."'" *State v. McDonald,* 2026-Ohio-558, at ¶ 30 (8th Dist.), quoting *State v. Mulkey,* 98 Ohio App.3d 773, 784 (10th Dist. 1994), quoting *Lee v. Baldwin,* 35 Ohio App.3d 47, 49 (1st Dist. 1987). We have recognized that when a law enforcement officer testifies "'as a lay witness to opinions based on his [or her] experience as a police officer, his [or her] previous investigations, and his [or her] perception of evidence at issue,' the first prong is satisfied." *Id.,* citing *State v. Walker-Curry,* 2019-Ohio-147, ¶ 12 (8th Dist.).

{¶ 37} Under the second prong of the test, the law enforcement officer's opinion testimony "may be admissible to explain a fact at issue even when it is based

on specialized knowledge." *Id.,* citing *Walker-Curry* at ¶ 13. In short, "if testimony is based on an officer's training and experience, related to the officer's personal observations during an investigation, and is helpful to determine facts in issue, the testimony is properly admitted as lay testimony under Evid.R. 701." *Id.*

**C. Analysis**

{¶ 38} Here, Officer Krizmanic testified that he observed a dark scuff mark on Freeman's vehicle and that the scuff mark was a similar color to that of Cordova's vehicle. He also observed that the scuff mark was on the side of the vehicle that would have made contact with Cordova's vehicle. And finally, based on his training and experience, he concluded that the mark was at the same height that it would have been had it made contact with Cordova's vehicle.

{¶ 39} Freeman objected to this line of questioning on the basis that Officer Krizmanic was not a crash reconstruction expert. The City responded, and the following discussion occurred:

> [Prosecutor]: So they didn't ask about the reconstruction of the accident, I asked him about whether or not the height of the skid mark or scuff mark on the defendant's vehicle is about the same height as where the contact allegedly occurred on Ms. Cordova's vehicle.
>
> Mr. Freeman: Objection, speculation.
>
> [Prosecutor]: Surely he can answer that based on his personal observations.
>
> The Court: He's done a lot of these before, have you?
>
> [Officer Krizmanic]: Yes, sir.
>
> The Court: How many you think?

[Officer Krizmanic]: Traffic accidents? Easily over 50.

The Court: 50 I think that would qualify him to be able to judge.

Mr. Freeman: Are you asking me or are you telling me, I'm sorry, Your Honor?

The Court: I'm asking you.

Mr. Freeman: I would say no, Your Honor.

The Court: Okay.

Mr. Freeman: I'm not an expert as well.

The Court: Okay, well I'm going to allow it.

{¶ 40} Here, Officer Krizmanic stated that he had investigated multiple traffic accidents. His testimony was based on his own observations concerning Freeman's vehicle, Cordova's vehicle, and other information he observed during his investigation, thereby satisfying the first prong of Evid.R. 701. His testimony concerning the scuff mark on Freeman's vehicle in relation to Corodova's was helpful to the factfinder concerning a "determination of a fact in issue." That is, the fact of whether Freeman's vehicle had struck Cordova's vehicle. Thereby satisfying the second prong under Evid.R. 701.

{¶ 41} Officer Krizmanic testified with respect to his own observations and as a law enforcement official who had conducted multiple investigations into traffic accidents. His testimony sought to aid the factfinder in deciding whether Freeman's and Cordova's vehicles had collided. This testimony was permissible under

Evid.R. 701. As such, the trial court did not abuse its discretion by allowing Officer Krizmanic to testify on these matters.

{¶ 42} Accordingly, Freeman's second assignment of error is overruled.

**Third Assigned Error for Review — Hearsay**

{¶ 43} In his third assigned error for review, Freeman claims that the trial court improperly admitted hearsay evidence with respect to the City's introduction of an unauthenticated repair estimate. After a thorough review of record, we agree that the introduction of the insurance estimates was error, but that Freeman has failed to demonstrate that the outcome of the trial would have been different had the estimate been excluded.

**A. Standard of Review**

{¶ 44} The City alleges that since Freeman did not object to the introduction of the repair estimate the issue is moot since Freeman had waived it. The City is incorrect. While it is true that Freeman did not object or allege to the repair estimates on hearsay grounds, when a party fails to object to the introduction of hearsay below, we review for plain error. *State v. Black,* 2019-Ohio-4977, ¶ 21 (8th Dist.), citing *State v. Obermiller,* 2016-Ohio-1594, ¶ 72.

{¶ 45} Pursuant to Crim.R. 52(B), plain errors are any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph

three of the syllabus. Thus, the party raising plain error must demonstrate "that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice." *State v. Buttery,* 2020-Ohio-2998, ¶ 7, citing *State v. Quarterman,* 2014-Ohio-4034, ¶ 16.

**B. Applicable Law**

{¶ 46} Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). "If either element is missing – (1) a statement or (2) offered for its truth – the testimony is not hearsay." *State v. Washington,* 2024-Ohio-1056, ¶ 18 (8th Dist.). Such hearsay statements are presumptively inadmissible. Evid.R. 802; *State v. Maxwell,* 2014-Ohio-1019, ¶ 129. "The historic purpose of the hearsay rule is 'to exclude statements of dubious reliability that cannot be tested by cross-examination.'" *State v. Wingfield,* 2019-Ohio-1644, ¶ 33 (8th Dist.), quoting *State v. Yarbrough,* 2002-Ohio-2126, ¶ 70.

**C. Analysis**

**1. The Repair Estimate Constituted Impermissible Hearsay**

{¶ 47} Here, the City introduced a repair estimate that had been retained by Cordova, indicating that the damage to her vehicle amounted to $5,195.10 in damages. It has been well established that estimates introduced for the purpose of establishing damages is hearsay. *Morgan v. Keenan,* 2026-Ohio-1034, ¶ 84 (7th Dist.) (recognizing that "Ohio intermediate appellate courts that have considered

the issue before us have universally concluded estimates offered to establish damages constitute hearsay"). Nonetheless, pursuant to Evid.R. 802, hearsay may be admissible if it falls within a defined exception "provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

{¶ 48} Evid.R. 803(6) provides that following are not excluded by the hearsay rule:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 49} This court has held that "it is error for a trial court to admit an estimate of cost of repair under Evid.R. 803(6) without the testimony of the person who actually prepared the estimate." *Amjoy v. Braggs,* 1994 Ohio App. LEXIS 446, *6 (8th Dist. Feb. 10, 1994). *See also Black v. Sakelios,* 2014-Ohio-2587, ¶ 31 (12th Dist.) (holding that because the party "did not call the authors of the estimate as witnesses or anyone else who could authenticate the estimate, the magistrate

correctly concluded that appellant's information regarding the repair estimate constituted inadmissible hearsay under Evid.R. 802").

{¶ 50} The author of the repair estimate did not testify at trial. As such, the trial court erred in allowing its admission.

### 2. Freeman Has Not Demonstrated but for the Admission of the Repair Estimate the Outcome of the Trial Would Have Been Different

{¶ 51} Since the introduction of the estimate was error, we must determine whether but for the error the outcome of the trial would have been different and whether notice of plain error is necessary to prevent a manifest miscarriage of justice.

{¶ 52} Here, Freeman argues that the repair estimate was utilized by the City to "establish the severity of the alleged collision" and "relied on that asserted severity to argue that [Freeman] must have known the accident occurred." However, even absent argument concerning the severity of the collision, the City presented ample evidence demonstrating Freeman's knowledge of the accident. As discussed above, this evidence includes Cordova's testimony concerning Freeman's post-accident erratic driving and fleeing the scene at a high rate of speed. Cordova also testified with respect to the "jarring impact" she felt when Freeman's car collided with her and the fact that she honked her horn just before impact.

{¶ 53} We cannot say the introduction of damages via the estimated cost of damage done to Cordova's car added much, if anything, to support the knowledge element with respect to Freeman's failure-to-stop-after-an-accident conviction. As

such, we cannot say that had this information been excluded, the outcome of the trial would have been different. Therefore, we find that the court's introduction of the repair estimate does not amount to plain error.

{¶ 54} Accordingly, Freeman's third assignment of error is overruled.

**Fourth Assigned Error for Review — Discovery Violation**

{¶ 55} In his fourth assigned error for review, Freeman claims that the trial court "abused its discretion by admitting photographs and an insurance estimate that were disclosed after the discovery deadline, without granting a continuance or imposing a remedial sanction." The City responds, asserting that the photographs and images had been "received a few days before the trial from [Freeman's] own insurance company . . . were duplicates of photographs and images that were provided to [Freeman] during the pretrial discovery period."

**A. Applicable Law**

{¶ 56} In a criminal case, discovery is governed by Crim.R. 16 which requires, in relevant part, that the City:

> provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule[.]

Crim.R. 16(B). When a court determines that a party committed a discovery violation, Crim.R. 16(L)(1) provides that "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from

introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

{¶ 57} "While a trial court has broad discretion in regulating discovery and determining a discovery violation, the court must impose the least severe sanction consistent with the purpose of the rules of discovery when it determines that a discovery violation has occurred." *State v. Sanders,* 2020-Ohio-5081, ¶ 40 (8th Dist.), citing *State v. Brown,* 2019-Ohio-1235, ¶ 86 (8th Dist.), citing *State v. Darmond,* 2013-Ohio-966, ¶ 33, and *Lakewood v. Papadelis,* 32 Ohio St.3d 1 (1987), paragraph two of the syllabus. When determining the appropriate sanction, the court must consider three factors: "(1) whether the failure to disclose was a willful violation of Crim.R. 16; (2) whether foreknowledge of the undisclosed material would have benefitted the accused in preparation of a defense; and (3) whether the accused was prejudiced." *Id.,* citing *Brown* at ¶ 87.

### B. Analysis

{¶ 58} Freeman objected to the admission of photographs and repair estimates alleging that they had not been provided prior to trial. Freeman never requested a continuance or any remedial sanctions from the trial court. Rather, he merely objected to their admission. The court explained that they had not yet been admitted. And there is nothing in the record indicating that these photographs and

images, which the City claims are duplicates of photographs Freeman had already received, were admitted at trial.

{¶ 59} In discussing the issue with the court, the following took place:

[Prosecutor:] Sure, I have copies for [Freeman,] and to be quite honest with you, he's already received them. We provided them to him in the April pretrial, and he's aware of the fact that his insurance company paid the $6,000 in damages for [Cordova's] car. He can't now argue that he wasn't aware of the fact that it's depicted in those documents, which we received from the insurance company, well prior to a few days ago, well prior to the discovery deadline, and they were provided to [Freeman.] I can assure you of that.

Mr. Freeman: I'm not arguing against the evidence per se. I'm not arguing against the claims or the photos. My only problem is he may have received them, but I would like to see a record that he gave me the evidence. I don't think I've received anything from the insurance company knowing that he would be using it in this trial today. So I wouldn't have time to prepare.

[Prosecutor]: Judge, I can tell you unquestionably, Mr. Freeman has filed motions in limine, motions to suppress. Judge Sterkel has ruled against all of them and has indicated, I will, as an officer of the court, verify that Mr. Freeman was aware, back at our April pretrial, that his insurance company paid the damages for that. I actually showed him a copy of those particular documents at that time, indicating, and that was done April 29th, Your Honor, relative to this case. . . . And again, he was advised that his insurance company paid approximately $6,000 in damages for the vehicle he struck that day.

{¶ 60} There is nothing in the record to indicate what discovery Freeman received from the City and when he received it. Nor does he necessarily dispute the prosecutor's claims that what he received was anything but duplicates of the

photographs he was contesting. To make such determination to the contrary would require us to rely on evidence that is not part of this record.

{¶ 61} It has been well established "appellate review is strictly limited to the record." *State v. Yancy,* 2026-Ohio-1549, ¶ 15 (8th Dist.). Thus, "[e]vidence outside the record cannot be used in a direct appeal." *In re A.T.,* 2021-Ohio-2934, ¶ 34 (8th Dist.), citing *State v. Hartman,* 2001-Ohio-1580; *State v. Ishmail,* 54 Ohio St.2d 402 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

{¶ 62} We are limited to the record before us to determine whether a discovery violation occurred, or whether the trial court erred in failing to grant a continuance or any remedial sanctions upon the City. Based on the record before us, we cannot draw any such conclusion.

{¶ 63} Accordingly, Freeman's fourth assignment of error is overruled.

### III. Conclusion

{¶ 64} Following a thorough review of the record and applicable law, we overrule Freeman's six assigned errors for review. His convictions are affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction

having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
TIMOTHY W. CLARY, J., CONCUR